IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 29, 2022

**GEORGE JOHN BYRD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 97264    Kyle A. Hixson, Judge**

——————————————————————

**No. E2021-00562-CCA-R3-PC**

——————————————————————

The Petitioner, George John Byrd, filed a petition for post-conviction relief from his three aggravated rape convictions, his aggravated assault conviction, and the resulting effective sentence of twenty-five years.  The Petitioner alleged that his trial counsel was ineffective by "opening the door" to evidence that was detrimental to the Petitioner, inadequately preparing for trial, failing to interview and call certain defense witnesses, and failing to prepare the Petitioner to testify at trial.  The post-conviction court denied the petition, and the Petitioner appeals this ruling.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Bailey M. Harned, Knoxville, Tennessee, for the Appellant, George John Byrd.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On direct appeal, this court summarized the proof adduced at trial.  State v. George John Byrd, No. E2009-02091-CCA-R3-CD, 2010 WL 4622009, at *1 (Tenn. Crim. App.

at Knoxville, Nov. 15, 2010). [1]  The proof revealed that the Petitioner and the victim married in October 2006, but the victim soon moved away due to marital problems.  Id.  In February 2007, the victim and the Petitioner reconciled after the Petitioner promised to seek rehabilitation for his drug problem.  Id.  The victim was granted an order of protection due to acts of violence the Petitioner had committed against her.  Id.

On May 22, 2007, the victim; the Petitioner; the Petitioner's ex-girlfriend, Christina Paschal; and Paschal's boyfriend, Joey Bowman, celebrated the Petitioner's birthday at the Petitioner's apartment.  Id.  The victim noted that at the time of the party, she and the Petitioner had been awake for three days because the Petitioner "was on an extended drug binge, and he would not let her go to sleep."  Id.  The victim stayed sober, but the Petitioner, Paschal, and Bowman drank alcohol and ingested cocaine throughout the early afternoon and the night.  Id.  The Petitioner became angry at the victim for "ruining his party," and he warned her that she would "'pay for being a bitch[.]'"  Id.  The victim thought the Petitioner was threatening to hurt her.  Id.

At 6:30 a.m., the Petitioner told the victim to go to bed, and he followed her upstairs to the bedroom.  Id.  Paschal and Bowman continued drinking downstairs.  Id.  In the bedroom, the Petitioner forced the victim "to perform oral sex at least three times, anal sex twice, and vaginal sex once."  Id.  The victim did not consent to any of the sex acts.  Id. The victim did not cry out for help because the Petitioner had threatened to kill her, Paschal, and Bowman if his friends came into the bedroom.  Id. at *2.  The victim and the Petitioner fell asleep, and the victim awoke thirty minutes later.  Id.  She managed to leave the house, run to a ministry, and call her sister and 911.  Id.  Later, an ambulance took her to the hospital.  Id.  The victim experienced pain in her rectum and vagina after the rapes.  Id.

On cross-examination, the victim said that for two days prior to the Petitioner's birthday, the Petitioner repeatedly obtained and consumed beer and drugs.  Id.  The victim and the Petitioner were unemployed at the time of the offenses, they "lived in government housing, [they] received food stamps, and [they] were given money by [the Petitioner's] mother and sister."  Id.

On redirect examination, the victim said that after the offenses, the Petitioner repeatedly called to persuade her not to come to court.  Id.  When asked how the Petitioner could afford to purchase alcohol and drugs immediately prior to the offenses, the victim explained, "'He was stealing fishing reels from Wal-Mart, taking them back and getting a gift card, [and] selling the gift card to get the cash to get the drugs.'"  Id.

---

[1] On direct appeal, this court noted that the proof adduced at trial was "extremely graphic."  Byrd, No. E2009-02091-CCA-R3-CD, 2010 WL 4622009, at *1.  This court limited the summary of the facts to those necessary to address the issues raised.  Id.

The sexual assault nurse who examined the victim testified that she saw no tears or redness in the victim's vagina, but she saw "a blue bruise." Id. The victim told the nurse that her pubic area and "external anus" were tender. Id. The victim seemed frightened and reported fearing for her life. Id. The victim described the sexual assaults, saying that during the assaults, the Petitioner had a knife on the bedroom dresser and that the Petitioner had threatened her. Id.

The Petitioner testified that on the night of his birthday party, the victim was upset because he was using drugs. Id. Additionally, she was "'real obsessed' with him," got upset when he talked with other women, and was mad because his ex-girlfriend, Paschal, was at the apartment. Id. The Petitioner estimated he drank nineteen to twenty beers on the night of the offenses. Id. The Petitioner agreed that he and the victim had vaginal, anal, and oral sex, but he contended that the sex was consensual and was initiated by the victim. Id. The Petitioner acknowledged that he called the victim while he was in jail and apologized for what happened but claimed that he did so to "make her happy." Id. Nevertheless, the Petitioner asserted that he was innocent and that the victim had falsely accused him. Id.

On cross-examination, the Petitioner acknowledged that he called the victim while he was in jail, told her he loved her, and asked her to drop the charges against him. Id. at *4. The Petitioner conceded he told the victim that he was responsible for what happened but explained that he made the concession because he was trying to calm her down. Id. The Petitioner stated that everyone knew the victim's allegations against him were false and that she "had previously claimed that an ex-boyfriend raped her daughter." Id.

At the conclusion of the trial, the Petitioner was convicted of three counts of aggravated rape, a Class A felony, and one count of aggravated assault, a Class C felony. Id. at *1. He was sentenced to twenty-five years for each aggravated rape conviction and to twelve years for the aggravated assault conviction. Id. The sentences were ordered to be served concurrently for a total effective sentence of twenty-five years. On direct appeal, this court affirmed his convictions and sentences. Id.

Thereafter, the Petitioner filed a pro se post-conviction petition, alleging that his trial counsel was ineffective. Post-conviction counsel was appointed, and amended petitions were filed. In the petitions, the Petitioner alleged that his trial counsel was ineffective by "opening the door" to evidence that was detrimental to the Petitioner, inadequately preparing for trial, failing to interview and call certain defense witnesses, and failing to prepare the Petitioner to testify at trial.[2]

---

[2] In the petitions, the Petitioner raised several additional allegations of ineffective assistance, which he has abandoned on appeal. We will limit our recitation of the facts to those pertinent to the issues the Petitioner raised on appeal.

At the post-conviction hearing, co-counsel testified that he joined the case a few days prior to trial at trial counsel's request and that he also handled the direct appeal. Co-counsel recalled that testimony was introduced at trial that the Petitioner had consumed large amounts of drugs and alcohol immediately prior to the offenses and that the Petitioner was unemployed. On redirect examination, the State wanted to question the victim about how the Petitioner could afford to buy the drugs and alcohol in order to elicit the victim's testimony that the Petitioner stole items from Walmart, returned the items for gift cards, and sold the gift cards for cash which he used to purchase the drugs and alcohol. The defense objected, arguing that the evidence was not probative to the issues at trial, that it was not relevant, and that it characterized the Petitioner as "a thief." The State said that the victim's testimony regarding the Petitioner's ability to purchase drugs, their living arrangements, and their lack of employment "opened the door" to the line of questioning. The trial court overruled the motion. Co-counsel raised the issue on appeal, and this court agreed with the trial court. Co-counsel acknowledged that, as noted by this court, Tennessee Rule of Evidence 404(b) was not raised. Co-counsel explained the defense thought arguing that the line of questioning "wasn't especially probative . . . was the stronger argument than the attempt to argue the danger of unfair prejudice of it being considered propensity evidence against him."

On cross-examination, co-counsel noted that the Petitioner had not been convicted of any thefts from Walmart. Co-counsel agreed that credibility was a "crucial issue" at trial and that the victim's credibility was bolstered by the introduction of recordings of calls the Petitioner made to the victim while he was in jail. During the calls, the victim discussed the allegations with the Petitioner, and the Petitioner did not dispute the allegations and "appeared to agree that he had done some of those things." However, the Petitioner testified at trial that he had not agreed with the victim but that he was trying to "appease her."

Co-counsel agreed the victim's credibility was further bolstered by the fact that immediately after the sexual assault, the victim left the residence, made a complaint, and went for an examination. During the examination, the victim told the sexual assault nurse that she was afraid of the Petitioner and that the Petitioner had threatened her. The sexual assault nurse found physical evidence which corroborated the victim's allegations. The defense acknowledged that the Petitioner and the victim had sex but maintained that the sex was consensual. Co-counsel recalled that the victim's testimony and the recordings of the jail telephone calls showing the Petitioner repeatedly attempted to convince the victim not to appear in court was damaging to the defense.

Trial counsel testified that he was not able to review his file before the post-conviction hearing because the case had occurred thirteen years prior to the hearing, and the file was in storage. Nevertheless, trial counsel recalled that on April 11, 2008, after the public defender's office developed a conflict, trial counsel was appointed to represent the Petitioner in general sessions court. Trial counsel said that the Petitioner maintained that the sex was consensual.

Trial counsel acknowledged that the Petitioner had arranged "a three-way call" with himself, trial counsel, and the victim. During the call, the Petitioner and the victim asked what would happen if the victim did not come to court, and trial counsel responded that he would ask for the case to be dismissed. However, he cautioned that the victim was under subpoena and that he would not advise her not to come to court. Trial counsel acknowledged that the case against the Petitioner was dismissed in general sessions court because the victim did not appear. Trial counsel said that he always informed his clients that if the case were dismissed in general sessions court, the district attorney could nevertheless take it "by presentment to a grand jury."

Trial counsel said he had received and reviewed the discovery. He was "sure" he reviewed the discovery with the Petitioner because he always reviewed the discovery with his clients. Trial counsel said that the defense's theory of the case was that the sex was consensual and that the victim was mad at the Petitioner due to a "typical" marital disagreement. Trial counsel hired an investigator, Barry Rice, who "scoured the country" looking for the individuals who were at the party. Trial counsel gave Rice "partial names" of Paschal and Bowman; however, Rice was unable to locate them.

Trial counsel said that although the Petitioner acknowledged he had been drinking alcohol and using drugs before the offenses, the defense wanted to show that the Petitioner did not have the financial ability to buy the drugs and alcohol. Therefore, trial counsel cross-examined the victim regarding how the Petitioner could afford to pay for the drugs and alcohol. Trial counsel acknowledged that his cross-examination "inadvertently opened the door to where they got the money when [the victim] said, 'Well, he went and stole stuff.'" Trial counsel did not know about the thefts until the victim mentioned them at trial. Trial counsel noted that the Petitioner had not been charged or convicted of the thefts, so no proof supported the victim's allegations.

Trial counsel recalled that prior to trial, the parties had agreed that the last page of the order of protection, which described the Petitioner's holding a knife to the victim's throat on an occasion prior to the offenses, would not be submitted to the jury. Trial counsel acknowledged that he "messed up" when cross-examining the victim because he mentioned that the jury had not "seen the entire order of protection." He explained that he made the statement while "we [were] right in the heat of talking back and forth and everything." On redirect examination, the prosecutor argued that trial counsel "open[ed]

- 5 -

the door" to the entire statement being shown to the jury, and the trial court agreed. Regardless, trial counsel asserted that he did not think the admission of the last page of the order of protection would have "swayed" the jury.

Trial counsel said that prior to trial, he and the Petitioner discussed whether the Petitioner should testify. Trial counsel noted, however, that the Petitioner never believed he would face trial because he thought the victim would not come to court. After the State rested its case-in-chief, trial counsel asked the Petitioner if he wanted to testify. Trial counsel advised the Petitioner that he had the right to testify but that he did not have to testify. The Petitioner decided to testify.

When asked about preparing the Petitioner to testify, trial counsel acknowledged that he did not "s[i]t him down and sa[y], Okay, here's our prep for your testimony." However, they discussed "stuff" and talked about the defense being that the sex was consensual. Regarding cross-examination, trial counsel stated that he always told his clients not to elaborate, to give "yes or no" answers, and to "be very careful what you say."

Trial counsel said that some of the Petitioner's family members wanted to testify regarding the victim's "past acts," such as the victim's "bragging about having anal sex . . . ." Trial counsel stated that he did not call them as witnesses because their testimony would have been redundant to the victim's testimony and could have exposed the defense to damaging cross-examination. Trial counsel called as a witness the Petitioner's ex-wife, Kimberly Derry, who testified that the Petitioner was a good person and that he had never done anything "forcible" to her.

On cross-examination, trial counsel agreed that he had filed numerous pretrial motions and was successful in excluding proof of multiple prior bad acts the Petitioner committed against numerous women, some of which resulted in warrants against the Petitioner. Trial counsel acknowledged that the proof at trial consisted primarily of the victim's testimony versus the Petitioner's testimony, which made their credibility crucial. Trial counsel opined that the victim was a credible witness and that her trial testimony was "extremely graphic" and detailed. Further, the investigating officer testified that the victim's allegations were corroborated by "the scene and her demeanor." Additionally, the sexual assault nurse who examined the victim found physical evidence to corroborate the victim's testimony. Trial counsel agreed that in light of the proof of the offenses, the alleged thefts from Walmart "kind of pale[d] in comparison" and opined that "the Walmart incident was [not] much, if any, issue at all." Trial counsel acknowledged that there was evidence the Petitioner prevented the victim from testifying at the preliminary hearing and that he tried to keep her from testifying at trial.

The Petitioner testified that trial counsel began representing him in general sessions court after another attorney was removed due to a conflict. The Petitioner did not recall

whether trial counsel visited him in jail but acknowledged trial counsel met with him prior to each court appearance. They discussed what would happen if the case were dismissed in the general sessions court. The Petitioner believed the case would "just be over with," but he "knew that there was a chance that the State could pick it up . . . ." The Petitioner said that after the case was dismissed in general sessions court, he went to prison because of parole violations. Afterward, he was "re-indicted . . . for more serious charges."

The Petitioner said that he and trial counsel did not discuss trial strategy. He explained that they thought the victim would refuse to come to court, and the case would be dismissed. The Petitioner recalled a telephone call he had with trial counsel, and the victim during which trial counsel told the victim that if she failed to come to court, the charges against the Petitioner would be dismissed, and the case would be over.

The Petitioner again maintained the defense theory was that the sex was consensual. The Petitioner told trial counsel that the victim had made "similar allegations against ex-boyfriends before" and that she said "one of her exes did something to her daughter." To the Petitioner's knowledge, trial counsel did not investigate the victim's prior allegations.

The Petitioner acknowledged that trial counsel may have visited him at the detention facility. The Petitioner did not review discovery with trial counsel, and he never listened to any recordings of jail telephone calls until they were played for the jury during trial.

The Petitioner said that he wanted Paschal[3] and Bowman called as witnesses at trial. The Petitioner asserted that the victim was "real possessive of" him and that she was angry because Paschal, the Petitioner's ex-girlfriend, was at the residence. Additionally, during the Petitioner's birthday party, the victim and Paschal talked about Paschal's receiving criminal compensation after someone was convicted of raping her.

The Petitioner opined that Paschal and Bowman should not have been difficult to find. Although he did not know their "physical address," he gave trial counsel a description of how drive to their residence. The Petitioner also thought that the probation office had Paschal's address and that the public defender's office had Bowman's address.

The Petitioner said the first time trial counsel mentioned that the Petitioner might need to testify was on the second day of trial after the recordings of the jail telephone calls were played for the jury. The Petitioner asserted that trial counsel did "[a]bsolutely nothing" to prepare him to testify and that the State's cross-examination of him "did not go well." The Petitioner explained he testified on cross-examination that he ran from the

---

[3] At trial, this witness' surname was spelled "Paschal." In the transcript of the post-conviction hearing, her surname was spelled "Pascal." For consistency, we have utilized the spelling used at trial and on direct appeal.

police because he was "nervous" and "paranoid." However, the "real reason" he ran was that he was on parole and was not supposed to be at that address. Additionally, the State cross-examined him about a prior theft conviction in Knox County, and he responded that he had not been convicted of any thefts. He explained that he thought the State was asking if he had been convicted of "stealing" anything. As impeachment, the State introduced proof that the Petitioner had been convicted of cashing a "rebate check" that was sent to his then-wife, Kimberly Derry. The Petitioner said that discussing potential cross-examination issues with trial counsel prior to his testimony would have been helpful.

The post-conviction court held that the Petitioner did not prove by clear and convincing evidence that trial counsel was deficient or that he was prejudiced by counsel's representation. On appeal, the Petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, the Petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When the Petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the [P]etitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the Petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the Petitioner must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause [the P]etitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

On appeal, the Petitioner contends that his trial counsel was ineffective by "opening the door" to evidence that was detrimental to the Petitioner, inadequately preparing for trial, failing to interview and call certain defense witnesses, and failing to prepare the Petitioner to testify at trial. The Petitioner makes only general arguments regarding these issues in three short paragraphs in his brief with no citations to the record. Generally, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7). Further, although the Petitioner complains that trial counsel opened the door to allow the admission of detrimental testimony and evidence, the Petitioner does not specify the testimony and evidence of which he complains. Such general arguments "are not sufficiently specific for this court to review." Phillip Matthew Burgess v. State, No. M2020-00028-CCA-R3-PC, 2021 WL 928475, at *25 (Tenn. Crim. App. at Nashville, Mar. 11, 2021).

Additionally, while the Petitioner claims trial counsel should have investigated and presented proof of the victim's prior false allegations of sexual abuse against other people, he presented no proof at the post-conviction hearing regarding such prior allegations. Also, despite the Petitioner's claims that trial counsel failed to prepare him to testify, he fails to contend what counsel could have done that would have been beneficial. Finally, even though the Petitioner complains that trial counsel was ineffective by failing to interview Paschal and Bowman and call them as witnesses at trial, he did not present the testimony of either Paschal or Bowman at the post-conviction hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit witnesses might have offered to the Petitioner's case, nor may we guess as to what evidence further investigation may have uncovered. Id. The Petitioner is not entitled to post-conviction relief.

- 9 -

### III.  Conclusion

The judgment of the post-conviction court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE